# CORNELIA ANDERSON v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

## Division Two, May 22, 1906.

1. **NEGLIGENCE: Alleging Specific Acts: Passenger: Collision.** Under the statute it is not necessary to allege the specific acts of negligence which resulted in the death of a passenger on defendant's train; but a general allegation that a collision between that and another of defendant's trains was caused by the negligence and unskillfulness of defendant's servants and that such collision resulted in his death, is sufficient.

2. ————: **Passengers: Those Remaining on Train.** Persons rightfully on the train as passengers when it stops at a station who desire to extend their journey further than was originally contemplated and remain on the train for that purpose, whether they have paid their fare or notified the conductor of their intention to proceed further or he had knowledge of such intention or not, are passengers. Every one riding in a railroad car is presumed prima facie to be there lawfully as a passenger, having paid, or being liable when called on to pay, his fare, and the burden is on the carrier to prove affirmatively that he was a trespasser.

3. ————: ————: **Inference Drawn From Facts.** Nor is it necessary, in order to submit the cause to the jury, to show by positive or direct evidence that the passenger, who had paid his fare to the point where the train stopped and where the collision occurred, purposed to continue his journey to the station where was his home and remained on the train for that purpose, but such purpose may be inferred from the facts and circumstances, and if they, in the estimation of the jury, authorize such an inference, then he was a passenger. Plaintiff's husband had paid his fare from a certain station to the one where the collision occurred; the train remained there twenty-five or thirty minutes, and he remained in the passenger coach; his home was at the next station beyond; at the time of the collision the train had started to move. *Held*, that these were facts from which the jury might properly infer that he remained in the coach, not as a trespasser, but for the purpose of proceeding as a passenger.

4. ————: **Of Brakeman: Damages: Definite Sum of $5,000.** A brakeman is a servant engaged in the operation and management of a train, and is such a servant as is contemplated by section 2864, Revised Statutes 1899, and if the death of plaintiff's husband was occasioned by his negligence she is entitled to recover the definite sum of $5,000, and the court did not err in refusing an instruction authorizing a verdict for a less sum.

Appeal from Cooper Circuit Court.—*Hon.* *Jas. E. Hazell,* Judge.

AFFIRMED.

*M. L. Clardy, Wm. S. Shirk* and *John Cashman* for appellant.

(1) The court erred in refusing to sustain defendant's objection to the introduction of any evidence. The petition is fatally defective. It states no act of negligence against defendant. General averments of negligence will not meet the requirements of the law. Gurley v. Railroad, 93 Mo. 450; Waldhier v. Railroad, 71 Mo. 514; Harrison v. Railroad, 74 Mo. 364; Edens v. Railroad, 72 Mo. 212; Troth v. Norcross, 11 Mo. 630; Jacquin v. Railroad, 57 Mo. App. 340; Leslie v. Railroad, 88 Mo. 50; Marshall v. Railroad, 78 Mo. 610; Pier v. Heinrichoffen, 52 Mo. 333; Moss v. Railroad, 49 Mo. 167; Whitehead v. Railroad, 22 Mo. App. 60. This rule applies in cases of passengers. Leslie v. Railroad, 88 Mo. 50; Marshall v. Railroad, 58 Mo. 50; Jacquin v. Railroad, 57 Mo. App. 340. A carrier of passengers is not an insurer, and acts complained of must state they were negligently committed. Waldhier v. Railroad, 71 Mo. 514. The facts in this case show that plaintiff had paid his fare from Marshall to Nelson and gave no notice of his intention to go further. He ceased to be a passenger upon arrival at Nelson and sufficient time to depart from the train. After this defendant owed him no duty except to not knowingly and willfully injure him. Under this state of the proof the petition was wholly insufficient to authorize a recovery. Authorities in point 1, supra; Smith v. Railroad, 113 Mo. 70; Raming v. Railroad, 157 Mo. 507. (2) After a reasonable time had elapsed for plaintiff to leave the train defendant owed him no further duty. The conductor was not bound to make special inquiry to

ascertain if those at their destination had taken their leave. Straus v. Railroad, 75 Mo. 185; Culberson v. Railroad, 50 Mo. App. 561; Hendricks v. Railroad, 136 Mo. 548; Railroad v. Cohn, 53 S. W. 698. Before deceased was entitled to the protection due to passengers he must show that he made a second offer to become a passenger and was accepted as such by defendant. Schaefer v. Railroad, 128 Mo. 64; Schepers v. Railroad, 126 Mo. 665. (3) Under the circumstances of this case the term "passenger" had a peculiar technical legal meaning and should have been explained. Harmon v. Donohoe, 153 Mo. 263; State v. Strong, 153 Mo. 548; State v. Sprague, 149 Mo. 409; Morgan v. Durfee, 69 Mo. 469; Wiser v. Chesley, 53 Mo. 547; Atteberry v. Powell, 29 Mo. 429; Bowles L. S. Co. v. Hunter, 91 Mo. App. 333; Rowen v. Railroad, 82 Mo. App. 24; Day v. Railroad, 81 Mo. App. 471; Jordan v. Webber M. Co., 72 Mo. App. 325; Hester v. Ins. Co., 69 Mo. App. 186; Horine v. Bone, 69 Mo. App. 481; Dry Goods Co. v. Schooley, 66 Mo. App. 406; Mason v. Stocks Yards Co., 60 Mo. App. 93; Railroad v. Dawley, 50 Mo. App. 480.

*W. G. & G. T. Pendleton* and *W. M. Williams* for respondent.

(1) The petition contained proper averments of negligence. The act complained of was set forth with reasonable particularity, and then charged to have been negligently done. These averments are identical with those heretofore approved by this court. An allegation that defendant "did by the servants and agents in charge of said car, and its servants in charge of another of the cars, so carelessly manage and conduct said cars as to cause and suffer the same to collide," has been held sufficiently specific. Malloy v. Railroad, 173 Mo. 79; Magrane v. Railroad, 183 Mo. 129; Rinard v. Railroad, 164 Mo. 270; Sullivan v. Railroad, 97 Mo. 113. Besides, defendant omitted to move to make the peti-

tion more definite and certain, but confined its objection on this point to the introduction of any evidence by the plaintiff. (2) Defendant's demurrer to the evidence was properly overruled. (a) It was admitted that plaintiff's husband was killed by the collision between defendant's trains. The collision itself was prima facie evidence of negligence, and the testimony was far from demonstrating that it could not have been avoided by proper care and attention. 2 Thompson on Negligence, sec. 2754; Hutchison on Carriers (2 Ed.), sec. 800; Magrane v. Railroad, 183 Mo. 128; Wilbur v. Railroad, 110 Mo. App. 694. (b) The court could not say as a matter of law that there was no evidence tending to show that plaintiff's husband was a passenger on defendant's train at the time he was killed, even though the jury should accept the conductor's story as true, which they were not bound to do. The fact that deceased was in the car provided by defendant for the accommodation of its passengers authorized the presumption that he was rightfully there. "Every one riding in a railroad car is presumed prima facie to be there lawfully as a passenger, having paid or being liable to pay his fare, and the onus is upon the carrier to prove affirmatively that he was a trespasser." Railroad v. Book, 98 Am. Dec. 234; Railroad v. Thompson, 9 N. E. 234; Gillingham v. Railroad, 11 L. R. A. 798. (3) The judgment was for the right party. There was practically no dispute about the facts upon which the right of plaintiff's husband to be treated as a passenger depends, and under such conditions it is immaterial, even though instructions should assume the existence of facts clearly proven. Carrol v. Railroad, 88 Mo. 239; Albert v. Railroad, 106 Mo. App. 643.

FOX, J.—There was a verdict and judgment for the plaintiff in the Cooper Circuit Court, and this cause is here upon appeal by defendant. The judgment in

this cause is predicated upon the following acts of negligence complained of in the petition filed by plaintiff:

"Plaintiff states that she is the widow of Robert Anderson, deceased. That the defendant is and was at the time hereinafter mentioned a corporation duly organized and existing under and by virtue of the laws of the State of Missouri, and as such running and operating a railroad in said State through and from the city of Nelson, in Saline county, to the city of Blackwater, in Cooper county; that defendant in the operation of said railroad is and was at said time a common carrier of passengers for hire between said points.

"That on the 5th day of June, 1902, the said Robert Anderson entered into a passenger car of defendant on its said railroad at said city of Nelson, a station on said railroad, as a passenger for transportation over said railroad to said city of Blackwater, and as such passenger was lawfully in said car which was part of and situated at or near the rear of a train of cars attached to a locomotive headed east on said railroad. That while said Robert Anderson was a passenger on defendant's said train as aforesaid, and while said train and locomotive was standing on defendant's railroad track at said station of Nelson, another train of cars drawn by a locomotive also headed east and on the same railroad track as aforesaid approached at high speed and ran into the rear end of and collided with the first above-mentioned train, upon which plaintiff's said husband was a passenger, with great force and violence, completely wrecking and demolishing the car in which the said Robert Anderson was situated, and wounding and bruising the said Robert Anderson, from the effect of which he then and there died.

"That the aforesaid car, train of cars and locomotives at the time aforesaid belonged to and were being run, conducted and managed by officers, agents, servants and employees of the defendant, and the injury

resulting in the death of the said Robert Anderson as aforesaid was occasioned by the negligence and unskillfulness of said officers, agents, servants and employees whilst so running, conducting and managing said car, trains of cars and locomotives.

"Wherefore plaintiff has been damaged in the sum of five thousand dollars, for which, together with costs of suit, she prays judgment against defendant."

The answer to this petition consists of a general denial, followed by a special denial of any negligence on the part of the agents and servants of defendants, and a statement that whatever injuries plaintiff's husband may have received, were the result of and occasioned by pure accident, without negligence on the part of the agents and servants of defendant.

The trial of this cause was had on the 29th day of January, 1903. There is practically no dispute as to what the testimony tended to prove in this cause. There is no controversy over the fact that Robert Anderson was plaintiff's husband, and there is no contention that the suit was not instituted within the statutory period, that is, six months after his death. The testimony upon the trial tended to establish substantially the following state of facts: That Robert Anderson resided at Blackwater, a town and station on defendant's railway; that he left Blackwater on the afternoon of June 5, 1902, on defendant's west-bound passenger train for the city and station of Marshall on said railway; that he reached Marshall, and later on the same afternoon took passage on another of defendant's trains returning east toward Blackwater, his home; that the latter train reached the station of Nelson between Marshall and Blackwater late on said afternoon; that the train (a mixed stock and passenger train) stopped at Nelson twenty-five or thirty minutes, loading and unloading freight, and taking on stock cars; that immediately after this train at Nelson started on its journey toward Blackwater it was run into in the

rear by another train going in the same direction, resulting in a collision and a wreck of the passenger coach of the forward train; that after the wreck rescuers found Robert Anderson in the wrecked coach, badly mangled, and that he died a few minutes after his removal from the wreck. The conductor of the train deceased was on testified that the latter paid his fare from Marshall to Nelson. It was admitted by defendant at the trial that the railway and trains mentioned were the property of the defendant, that said trains at the time of the collision were being operated by defendant's servants, and that Robert Anderson died as the result of injuries caused by said wreck.

The evidence further showed that the train Anderson was on was a regular train, running several hours behind its schedule time at Nelson; that according to the defendant's regulations, it was the duty of its servants operating said train, when it stopped at Nelson, to send a signal man to the rear, and by the use of a signal flag, and by placing torpedoes on the track, warn approaching trains of the presence of this train at Nelson. The conductor of the forward train testified that he sent a brakeman back with a flag for the purpose of signalling the following train, but there was no evidence that he did signal said train. The brakeman was not present to testify at the trial. The engineer of the rear train testified that he saw no flag and heard no torpedoes as he approached Nelson, and his testimony and that of witnesses for the plaintiff showed that a few yards west of the Nelson depot the railway makes a sharp curve through a deep cut, so that an engineer going east could not see a train at the depot until he approached very close.

At the close of the evidence the defendant requested the court to give an instruction in the nature of a demurrer to the evidence which substantially told the jury that under the pleadings and all the evidence in the case the plaintiff was not entitled to recover and the jury

will find for the defendant. This request was denied and the court refused to give the instruction.

At the request of the plaintiff the court gave the following instructions:

"1. The jury are instructed that if they believe from the evidence that on or about June 5, 1902, Robert Anderson was a passenger on one of defendant's trains, and that in consequence of the negligence of the defendant's servants, agents and employees whilst running, conducting or managing said train of cars, another train of cars going in the same direction upon defendant's said railroad ran into and collided at the station of Nelson with the car in which said Anderson was, and he was thereby killed, and that said collision occurred and his death resulted from the carelessness and negligence of defendant's servants in running, conducting or managing said train on which he had taken passage, or the train colliding therewith, and that plaintiff is his widow, and this suit was begun within six months after his death, they will find the issue for the plaintiff and assess her damages at the sum of five thousand dollars.

"Even if the jury should find from the evidence that Robert Anderson got on defendant's train at Marshall and only paid his fare to Nelson, still if the jury believe from all the facts and circumstances in evidence that he determined to continue his journey to Blackwater and remained on said train for that purpose, the fact that he only paid his fare from Marshall to Nelson is no defense to this suit.

"2. If the jury believes from all the evidence in the case that the death of Robert Anderson was the result of mere accident or misadventure, and that the same was not caused by any negligence on the part of defendant or its servants, then they must return a verdict for the defendant."

196 Sup.—29

The defendant requested the court to instruct the jury as follows:

"1. If the jury find from the evidence that the accident by which plaintiff's deceased husband was killed was not occasioned by, or did not result from the negligence, unskillfulness or criminal intent of any of the agents, servants or employees of defendant, whilst running, conducting or managing the locomotive and train of cars, which collided with the car on which her said husband was seated, or whilst running, conducting or managing the locomotive and train of cars, on which her said husband was a passenger, but that such accident was caused and brought about by the rear brakeman of the train on which plaintiff's deceased husband was a passenger, in failing to properly guard such train from being run into, by a train following it, then if the jury find for the plaintiff, they are not bound to assess her damages at just the sum of five thousand dollars, no more nor less, but may assess the same at any sum not exceeding the sum of five thousand dollars.

"If the jury find for the plaintiff, then in assessing her damage, they can only assess such damages at such sum as will compensate her for the pecuniary injury necessarily resulting to her from the death of her husband; the jury cannot allow her anything on account of any pain, sorrow or mental anguish which she may have suffered on account of her said husband's death.

"And in arriving at the pecuniary value of her husband's life to her, they should take into consideration his age at the time of his death; and also the probable length of time that he may have lived after the date of his death; and also his power, ability and capacity to earn money, and acquire property at the time of his death; also his moral, social and domestic habits.

"And if after considering all these matters, under the evidence you should find that the pecuniary value

of his life was worth nothing to the plaintiff, then your verdict will be for the defendant.

"But if after considering all these matters, you should find that the pecuniary value of his life was worth something to plaintiff, then you will find for the plaintiff and assess her damages at such sum only as will, under all the evidence in the case, compensate her for the pecuniary loss which may have necessarily resulted from her husband's death.

"2. The court further instructs the jury, that it is alleged in plaintiff's petition as the ground work of her action that the plaintiff's husband, Robert Anderson, was a passeger upon defendant's train, at the time he received the injury which resulted in his death, and the burden of proving that he was such passenger is upon the plaintiff. And unless you believe and find from the preponderance of the evidence that he was, at the time he was killed, on board of the train, as such passenger, as hereinafter defined, then the plaintiff cannot recover herein, and the jury will find for the defendant. And if the jury find from the evidence that plaintiff's said husband had taken passage on its train at Marshall, and had paid his fare to said station of Nelson, and after the arrival of said train at Nelson, he remained on board the train, talking to a friend, without notifying the conductor of said train that he wished to go further on said train, and that the conductor of said train did not know that he remained aboard said train after it arrived at Nelson, then the plaintiff's husband, Robert Anderson, was not a passenger on said train."

Which instructions so requested by the defendant were by the court refused, to which action of the court timely objections and exceptions were preserved, Whereupon the cause was submitted to the jury and they returned a verdict finding the issues for the plaintiff and assessing her damages at the sum of five thousand dollars. Defendant within the proper time filed

its motion for a new trial, which was by the court overruled. Judgment was entered in accordance with the verdict and from this judgment defendant in due time and proper form prosecuted this appeal to this court and the record is now before us for consideration.

#### OPINION.

The record in this cause discloses numerous assignments of error on the part of appellant. We will treat of such complaints in the order suggested by the brief and give them such consideration as their importance merit and demand.

I. It is insisted that the petition in this cause is fatally defective and that the court erred in refusing to sustain defendant's objection to the introduction of any evidence. This insistence is predicated upon the contention of the defendant that the averments in the petition of the negligence complained of are too general and do not meet the requirements of the law.

We have carefully considered the petition upon which this proceeding is predicated and we are unable to agree with learned counsel for appellant that this petition is fatally defective or fails to state a good cause of action. The recovery in this cause is sought under the provisions of section 2864, Revised Statutes 1899, which substantially provides that where any passenger shall die from any injury resulting from or occasioned by the negligence and unskillfulness or criminal intent of any officer, agent, servant or employee whilst running, conducting or managing any locomotive, cars or train of cars, the owner of such railroad shall forfeit and pay for every passenger so dying the sum of five thousand dollars. Then follow the provisions of said section designating the persons who may sue for and recover such forfeiture.

The petition in this case alleges with sufficient particularity every essential element necessary to support

a recovery under the provisions of the section above cited. It expressly avers that at a certain time Robert Anderson, husband of the plaintiff, was a passenger for transportation over defendant's railroad and that while said Robert Anderson was a passenger on defendant's train of cars and whilst said train was standing on defendant's railroad track at the station of Nelson another train of cars drawn by a locomotive also headed east and on the same railroad track of defendant, approached at high speed and ran into the rear end of and collided with the first above-mentioned train upon which plaintiff's said husband was a passenger, with great force and violence, completely wrecking and demolishing the car in which the said Robert Anderson was situated, and wounding and bruising the said Robert Anderson, from the effects of which he then and there died. Then follows a specific allegation that the aforesaid cars, trains of cars and locomotives at the time aforesaid belonged to and were being run, conducted and managed by officers, agents, servants and employees of the defendant, and the injury resulting in the death of said Robert Anderson aforesaid was occasioned by the negligence and unskillfulness of said officers, agents, servants and employees whilst so running, conducting and managing such cars, train of cars and locomotives.

We are unable to conceive under the uniform rulings of this court in what particulars the acts of negligence complained of should have been more specific. If plaintiff's husband was a passenger upon the train of cars of the defendant, then he was entitled to be safely transported to the point he purposed going, and if he was killed by reason of the train on which he was traveling being run into and wrecked by another of defendant's trains, and such collision was occasioned by the negligence or unskillfulness of the officers, servants or employees in running, conducting and managing said train, it was not essential to allege the particular acts

of any particular servant or employee which occasioned the collision, but it is only necessary to allege generally the collision and that such collision was occasioned by reason of the negligence and unskillfulness of those operating and managing the train, and that the injuries and death of plaintiff's husband were the result of such negligence and unskillfulness.

In view of the recent expressions of this court applicable to this subject, and the questions of pleading involved in the case at bar, we deem it unnecessary to burden this opinion with a review of all the authorities touching this proposition presented for consideration. In Rinard v. Railroad, 164 Mo. 270, a recovery was sought for the killing of plaintiff's husband, caused by a collision of two trains upon defendant's road near Galt in Grundy county, Missouri. The collision of the two trains in that case was alleged in a very similar manner to the allegations of the collision of the case in hand, which was followed by a charge in the petition that the collision was the result of and occasioned by the negligence of the officers, agents, servants and employees of defendant whilst running, conducting and managing said locomotives, cars and trains aforesaid. The sufficiency of the petition in that case was challenged and such challenge was fully considered, and in treating of it this court thus stated the proposition and announced its conclusion upon the question presented: "It is next insisted that the motion to require the plaintiff to make each count of the petition more definite and certain, 'by specifying the officer, agent, servant or employee of defendant whose alleged negligence occasioned the death of plaintiff's husband, and also by specifying in what respect and upon what particular train such officer, agent, servant or employee was negligent,' should have been sustained. In Gurley v. Railroad, 93 Mo. 445, BLACK, J., delivering the opinion of this court, held that 'the acts done or omitted, which constitute the negligence complained of, should be stated with a rea-

sonable degree of particularity.' And in Sullivan v. Railroad, 97 Mo. l. c. 117, it was insisted that the petition was bad under the rule laid down in the Gurley case, but the same learned judge said: 'The rule of that case is, that it is good and sufficient pleading to set out and describe the acts done with a reasonable degree of particularity, and then allege that they were negligently done. In this case the petition sets out the circumstances as a matter of inducement, to the unnecessary extent of stating the names of the conductor and engineer in charge of the train; it states that Sullivan was run upon and killed by the designated train, and that his death was occasioned by the negligence of the defendant's servants while running, conducting and managing the locomotive and train of cars. The petition is clearly within the rule of the case before cited.' In Pope v. Railroad, 99 Mo. 400, the negligence charged was general. The sufficiency of the petition was challenged. BRACE, J., said: 'The objection urged against it, however, that it does not specify the particular act of negligence which it is claimed caused the injury, is answered by the case of Sullivan v. Railroad, 97 Mo. 113; Johnson v. Railroad, 96 Mo. 340.' These cases have been cited approvingly and followed in Dickson v. Railroad, 104 Mo. l. c. 502; Shaw v. Railroad, 104 Mo. l. c. 656; LeMay v. Railroad, 105 Mo. l. c. 370. In all these cases the negligence was charged in general terms, and followed substantially the language of the statute. [R. S. 1889, sec. 4425.] The negligence charged in the case at bar is as specific as that charged in the Sullivan case, supra, or in any of the cases that have followed it, and is a substantial compliance with the requirements laid down in the Gurley case.''

To the same effect is Malloy v. Railroad, 173 Mo. 75. That was also a case in which the injuries complained of resulted from a collision between the car upon which the plaintiff was riding as a passenger and another car upon the track of the defendant.

In that case the collision alleged and the negligence charged in the petition was that the defendant "did, by the servants in charge of said car and its servants in charge of another of the cars, so carelessly manage and control said cars as to cause and suffer the same to collide." The complaint was urged in that case that the petition was not sufficiently broad, and this court very clearly and tersely responded to such complaint in the following language: "Certain it is that the collision was caused by the negligence of some one or more of the defendant's servants who were in charge of the cars, in one capacity or another, and directly connected with their movements. It follows that the petition is as broad as is necessary to support a recovery in this case, and that as it was not incumbent upon the plaintiff to charge the specific negligence of any particular servant, so it was not necessary for the plaintiff to show which servant so in charge of the cars was negligent, for the defendant was liable for the negligence of all such servants."

II. It is earnestly urged that the court erred in refusing to give defendant's instruction in the nature of a demurrer to plaintiff's evidence and in refusing to instruct the jury to find the issues for the defendant at the close of all the evidence. The basis of that contention is predicated upon the theory that there was a failure of proof upon the case stated in the petition. In other words, that the testimony elicited upon the trial of this cause failed to show that plaintiff's deceased husband was at the time of his death a passenger upon defendant's train of cars. It is earnestly contended and ably argued that, by reason of the testimony of the conductor that plaintiff's husband had only paid his fare from Marshall to Nelson, when the train reached Nelson and stopped a reasonable length of time for the passengers on the train to alight, the relation of

passenger and carrier as between plaintiff's husband
and defendant ceased.

We are unable to agree with counsel for appellant
upon this insistence. Conceding for the purpose of
the discussion upon this proposition, that the court and
jury were bound to accept the conductor's statement
that plaintiff's husband had only paid his fare to the
station of Nelson, yet were not the facts and circum-
stances detailed in evidence sufficient to warrant the
court in submitting the question as to whether or not,
after reaching Nelson or before reaching there, he con-
cluded or determined to remain on the train and contin-
ue his journey to Blackwater, and that his remaining on
the train was for that purpose? The testimony clearly
shows that the home of the deceased was at Blackwat-
er; his family was there and he had only left that place
for Marshall a few hours previously and was at the
time of the collision returning from the last-mentioned
place on a train going towards his home. The coach in
which the deceased was traveling stopped at Nelson 25
or 30 minutes before the collision; the testimony fails
to show that he made any effort to alight from it and
if he did alight from the car he must have returned, for
he was found fatally injured in the coach in which he
was traveling immediately after the collision.

It is conceded by appellant's counsel that if plain-
tiff's husband had stepped off the car and then step-
ped on again at Nelson, he would then have been enti-
tled to protection as a passenger, whether the conductor
knew he was on the train or not. However, it is con-
tended that if he remained on the train for the purpose
of continuing his journey to Blackwater, it devolved up-
on him to notify the conductor or for the conductor to
have knowledge of his purpose to continue such journey
before he was entitled to protection as a passenger. We
are unable to give our assent to the views of counsel
for appellant upon this proposition as to the law which
should govern the relation of carrier and passenger. It

was ruled in Barth v. Railroad, 142 Mo. 535, that when the train of a common carrier stopped at a station and passengers were permitted to alight, and the iron gate to the platform was opened, it was an invitation to the passengers to take passage thereon. If it be true that, when a common carrier stops its train of cars at the platform at one of its stations, such act upon its part is an invitation to passengers to take passage on the train, is it not equally true that an invitation is extended to those persons who are on the train and desire to extend their journey further than was originally contemplated, to remain on the train, and if in fact they do remain on the train for such purpose, are they not in the eyes of the law entitled to the same protection as passengers as those who enter the train for the first time at such station?

There is no rule of law which requires a passenger, if he has only paid his fare to a certain point of destination, to leave the train at that point, but if he desires to continue his journey it is manifestly his right to remain in the car and when demanded of him, pay his fare to the place of destination. It is but common knowledge that persons traveling upon railroad trains very frequently do not alight and stop at the point of destination originally contemplated when they enter the car, but proceed to some other point where business may call them, and under such circumstances they simply remain on the train and proceed with their journey, and in our opinion they are no less passengers in contemplation of law than if they had alighted from the train at the station originally contemplated, transacted business and re-entered the coach for the purpose of continuing their journey. The question in this case is not whether plaintiff's husband had been afforded reasonable time to leave the train at the station to which he had paid his fare, but whether or not, if he purposed to go further, he was in duty bound, in order to preserve his protection as a passenger, to alight from the train and then

immediately re-enter it. We are of the opinion that this would be a useless and meaningless performance which the law does not impose upon any citizen in order to preserve his protection as a passenger upon the train of a common carrier.

The defendant in this case was a common carrier, and plaintiff's deceased husband at the time of the collision was in the coach used by defendant for the purpose of transporting passengers; he resided at Blackwater, and his family was there, and at the time of this collision the train had started to carry such passengers as were on it to other points of destination along its line. Under this state of facts the presumption must be indulged that plaintiff's husband was lawfully in such coach. This principle was expressly ruled in Railroad v. Books, 98 Am. Dec. l. c. 234. It was there said that "every one riding in a railroad car is presumed prima facie to be there lawfully as a passenger, having paid, or being liable, when called on to pay, his fare, and the *onus* is upon the carrier to prove affirmatively that he was a trespasser." To the same effect is Railroad v. Thompson, decided by the Supreme Court of Indiana. [9 N. E. 357.] It was there said that the authorities abundantly prove "that one who is on a train used for carrying passengers is, in the absence of countervailing evidence, presumed to be rightfully there as a passenger." A similar ruling was made in Gillingham v. Railroad, 14 L. R. A. 798.

While it may be said that the jury in the trial of this cause were not bound to accept the testimony of the conductor that plaintiff's husband had only paid his fare to Nelson, yet as before stated, conceding that they should accept such testimony as true, still, if deceased remained in the defendant's coach for the transportation of passengers, for the purpose of proceeding to some other point on the line of defendant's road, and with the intention of paying in money his usual fare for such transportation to such other point, he was as

much a passenger in contemplation of the law as though he had entered the train for the first time at the station of Nelson.

Upon the facts as developed in this case the court would not have been warranted in declaring as a matter of law that there was no evidence tending to show that plaintiff's husband was not a passenger on defendant's train at the time he was killed. It was not essential, in order to authorize the submission of this cause to the jury, to show by positive or direct evidence that plaintiff's husband was a passenger at the time of the collision, or that it was his purpose to continue his journey further on from Nelson station; but if the facts and circumstances detailed in evidence were such as indicated the purpose and intention of deceased to proceed further on his journey from Nelson station, then the court would not have been authorized in disregarding the legitimate inference the jury were warranted in drawing from the circumstances detailed in evidence. Take the facts in this case, about which there is no dispute, and we are unable to see how to escape the conclusion that they authorized the submission of the cause to the jury. In the first place, the train stopped at Nelson station 25 or 30 minutes; there is an absence from the record of any testimony showing that the deceased alighted from the train, nor was there anything in his conduct or actions indicating that he desired or intended to get off the train. He remained in the passenger coach designed for the purpose of transporting passengers, and the conductor testified that at the time of the collision the train upon which deceased was traveling had started to move; still no effort on the part of the deceased to alight from this train; his home and family was at Blackwater, the place that he had left a few hours previously, to go to Marshall; the collision occurred while the train that he was upon was moving in the direction of his home; after the collision he was found in the coach where passengers should be. The

actions and conduct of the deceased in this coach clearly manifested an intention and purpose on his part to remain in said coach as a passenger and pay his fare when demanded of him, and he did remain in it until it started to leave the station to which the conductor says that he had paid his fare. The coach on defendant's train was for the purpose of carrying passengers, and if the deceased desired to proceed to his home at Blackwater he had the right to remain in said coach for that purpose, and he was not in any sense a trespasser in contemplation of law. The instruction in the nature of a demurrer to the evidence was properly denied by the court.

III. Complaint is urged that the court erred in refusing defendant's instruction numbered 2. Counsel in their brief refer to this instruction as number 3, but the record discloses that the legal propositions are all embraced in instruction numbered 2. We have given such instructions so refused our careful consideration and have reached the conclusion that there was no error in the court denying appellant's request. This instruction is reproduced in full in the statement of this cause, and the second subdivision of such instruction substantially announces as a legal proposition that if the deceased had taken passage on the train at Marshall, Missouri, and had paid his fare to the station of Nelson, it was essential after the arrival of said train at Nelson for the deceased to notify the conductor that he wished to go further on said train; then follows the further statement that if he remained on board the train talking to a friend, without notifying the conductor of said train that he wished to go further on said train, and that the conductor on said train did not know that he remained aboard said train after the arrival at Nelson, then and in that case he was not a passenger. In the first place, there was no testimony that the deceased was talking to a friend on the train, and in the second place,

as heretofore indicated, if the deceased was in the passenger coach and purposed to proceed further upon his journey he had the right to remain in such coach, and it was not essential that he should expressly notify the conductor that he wished to go further on said train.

It will not be seriously denied that if persons at the station of Nelson had entered said coach, they were passengers from the time of their entrance into the same, whether the conductor had any knowledge of their entrance or not, or whether they had a ticket or had paid their fare to the conductor. It was only necessary that they enter the coach either with a ticket authorizing their transportation, or with the intention of paying the usual fare for the same, and we are unable to see any well-grounded legal distinction between the person who enters the coach from a station for the purpose of going to some other point on the line of road, and the person who happens to be in the coach and remains there with the purpose of proceeding further, and with the intention of paying his fare to the point he desired to go.

IV. It is further insisted that the court erred in its refusal of the first subdivision of instruction numbered 2. That portion of the instruction required the jury to find that the deceased was a passenger in said train, as was defined by the terms embraced in the second subdivision of instruction numbered 2.

We have indicated that the second subdivision of instruction numbered 2 was erroneous and did not properly declare the law, hence it follows that the first subdivision of instruction numbered 2, which had for its basis the erroneous instruction, was also properly denied by the court. Again, it is insisted that the refusal of instruction numbered 2 left this case submitted to the jury without any requirement that they should find the deceased was a passenger, and without any guide as to what facts constituted him a passenger.

The appellant has manifestly overlooked what in

fact the jury were required to find in order to entitle plaintiff to recover. It will be observed that the defendant in its instruction requested upon the measure of damages, practically conceded and assumed by the terms of that instruction that deceased was a passenger on its train of cars; but aside from this the instructions given by the court required the jury to find every essential fact necessary to entitle plaintiff to recover. Instruction numbered 1 as given to the jury by the court required the jury to find that the plaintiff's deceased husband was a passenger on one of defendant's trains. That the deceased was a passenger up to the time the train reached the station of Nelson is conceded by appellant and is testified to by the conductor; hence the crucial question of fact to be found by the jury was whether or not he remained a passenger and was a passenger at the time the train was starting from Nelson station in the direction of Blackwater, and the jury in the closing part of instruction numbered 1 given on the part of the plaintiff, were required to find every essential fact necessary to constitute him a passenger. They were told that "if the jury believe from all the facts and circumstances in evidence that he determined to continue his journey to Blackwater and remained on said train for that purpose, the fact that he only paid his fare at Marshall to Nelson is no defense to this suit." While it may be said that the instruction is unhappily worded, and should have stated that the finding of the facts embraced in it would constitute deceased a passenger, yet the instruction required the finding of every essential fact necessary to make him a passenger, and the true meaning and import of it was that if they found that state of facts they would find that he was a passenger, and the fact that he only paid his fare to Nelson would constitute no defense to this suit. In other words, no other meaning can be given that instruction, it being conceded that he was a passenger up to the time the train reached Nelson, than that

if the jury should believe from all the facts and circumstances in evidence that he determined to continue his journey to Blackwater, and remained on the train for that purpose, he was a passenger. This was clearly the effect of that instruction, hence it must be ruled that under that instruction the jury were required to find that the deceased was a passenger, as well as all the essential facts necessary to constitute him such passenger, and this question having been fairly submitted to the jury there was no error in the refusal of the instruction requested by the appellant.

V. This brings us to the consideration of the only remaining proposition involved in this cause, that is, the contention of the appellant that the court erroneously refused defendant's instruction numbered 1 as to the measure of damages.

This suit was brought under section 2864, supra, and under the evidence introduced upon the trial the court very properly confined the recovery to that section. Instruction numbered 1 upon the measure of damages requested by the appellant, the refusal of which is now complained of, was entirely foreign to the section of the statute upon which this suit is predicated. Defendant's contention is that the death of plaintiff's husband was occasioned by the negligence of the brakeman, and that he was not a servant, such as is contemplated by the statute, engaged in the operation and managing of trains, therefore plaintiff was not entitled to recover in this action the definite fixed sum of five thousand dollars as a forfeiture under section 2864. In support of this contention our attention is directed to the case of Culbertson v. Railroad, 140 Mo. 35. A careful analysis of that case will demonstrate that it has no application to the case at bar. The petition in this case proceeds upon only one theory, and that is, it is alleged that plaintiff's deceased husband was a passenger upon defendant's train and that his death

was occasioned by the negligence and unskillfulness of the agents, servants and employees of the defendant whilst so running, conducting and managing said train of cars and locomotives. In the Culbertson case, relied upon by appellant, there were different acts of negligence alleged and relied upon for recovery. Some of the acts complained of in that case would fall within the provisions of the section fixing a definite penalty and others brought the case under a provision of the statute in which no definite penalty clause was fixed, and upon that question, GANTT, J., speaking for this court, simply announced the rule. He said: "It has been uniformly ruled in this State that where different acts of negligence are alleged and relied upon and some of them bring the case within the penalty clause of section 4425 and others bring the case within section 4426, it is error to instruct solely for the penalty. [Crumpley v. Railroad, 98 Mo. 34; King v. Railroad, 98 Mo. 235; Rapp v. Railroad, 106 Mo. 423.]"

That is not this case. That the brakeman is a servant who has duties to perform in operating and managing a train, such as the use of brakes, giving signals, etc., and whose negligent performance of such duties may easily produce fatal results, is too plain for discussion. Hence it must be held that he was a servant engaged with others in operating and managing the train upon defendant's railroad. [Malloy v. Railroad, 173 Mo. l. c. 81; Rinard v. Railroad, 164 Mo. 270.]

We have thus indicated our views upon the propositions disclosed by the record in this cause. There is no dispute that the collision which resulted in the death of plaintiff's husband was occassioned by the negligence of defendant's employees; the testimony plainly shows that fact and it is practically conceded, and we see no escape from the conclusion that the court properly submitted this cause to the jury and that the evidence is sufficient to support the finding of the jury; that the

plaintiff's husband determined to become a passenger from Nelson to Blackwater, and was on the train for that purpose when killed. His home was at Blackwater; his family was there, and he had left his home that afternoon for Marshall; the local freight train which provided a coach for passenger service, stopped at Nelson station 25 or 30 minutes; the conductor had given the signal to start, and the train had in fact started towards Blackwater before the collision occurred, and the plaintiff's husband was on the moving train in the regular passenger coach, and we are of the opinion that it was manifestly a correct and legitimate inference to be drawn by the jury that plaintiff's husband was on the train for the purpose of going to Blackwater, which was his home and natural destination.

Entertaining the views as herein indicated, it results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered.

All concur.